July 30, 2020

Paul E. Creager #46936-044
FCC-Forrest City Low
P.O. Box 9000
Forrest City, AR 72336

OFFICE OF THE CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
111 S. Tenth St.
St. Louis, MO 63101

Re: UNTIED STATES v CREAGER   No. 4:17CR356 RWS, 4:18CR00197-1 RLW

Dear Clerk:
   Please find enclosed Motion For Sentence Modification Under 18 U.S.C.§3582(c)(1)(A)(i) and the First Step Act of 2018 S. 3747 115th Congress in the above styled cases along with attachments. Please file the same as soon as practical and thereafter please send notice of receipt and filing.

Thank you for your time and any assistance in this matter.

Sincerely,

Paul E. Creager

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v | ) No. 4:17CR356 RWS |
| PAUL E. CREAGER, | ) |
| Defendant. | ) |

## MOTION FOR SENTENCE MODIFICATION UNDER 18 U.S.C. §3582(c)(1)(A)(i) AND THE FIRST STEP ACT OF 2018, S.3747 115th CONGRESS

**Comes now,** Paul Creager, Defendant, **pro se**, and respectfully moves this Court to grant compassionate release under the First Step Act: 18 U.S.C.§3582(c)(1)(A)(i), and order that the remainder of his sentence time served or to be served on home confinement. The motion should be granted because the global COVID-19 pandemic combined with Defendant's age and/or medical conditions presents an "extraordinary and compelling reason" for compassionate release.

Defendant is particularly susceptible to COVID-19 and is more likely to suffer dire consequences from the virus due to his age and medical conditions including but not limited to death and huge medical bills.

Defendant is incarcerated at the Federal Bureau of Prisons Facility with the highest number of positive inmates, FCI Forrest City Low in Forrest City, Arkansas. As of May 29, 2020 the facility reported 441 positive inmates and 47 recovering inmates, 1 positive staff and 3 recovered staff. The virus is rampantly spreading throughout the institution. The threat of contracting the coronavirus is very real for Defendant. The virus thrives in densely packed populations, and Defendant's facility is ill-equipped to contain the pandemic and prevent COVID-19 from spreading to inmates like Defendant. Allowing Defendant to finish out the remaining term of his sentence as time served and released to supervised release with a condition that the remaining term of imprisonment be served on home confinement is a prudent and just response to the extraordinary and compelling circumstances created by the novel coronavirus. Defendant's projected release date is 12/17/24. Defendant is presently not a danger to the community, and his release plan adheres to the mandates of §3553(a), particularly in light of the cataclysmic events of the pandemic. Defendant respectfully ask the Court to consider his motion on an expedited basis as the risk to his life multiplies exponentially with each passing day.

1

Defendant requested compassionate release on June         received no response from the Warden. Since thrity days has passed since his request with no response, this Court has jurisdiction to consider this motion for compassionate release. See attachment.

## SUMMARY OF ARGUMENT

This court should exercise its authority to grant Defendant compassionate release because the COVID-19 pandemic combined with Defendant's unique susceptibility to COVID-19, given his age and medical issues, is an "extraordinary and compelling" reason warranting relief. As long as Defendant remains incarcerated, he faces an unacceptable risk of contracting and dying from COVID-19. He is housed in the BOP facility with the highest number of positive inmates, FCI Forrest City Low. As of May 27, BOP reported that 5,043 inmates and 600 BOP staff members have tested positive for COVID-19; 64 federal inmates have died as a result. Fed.-Bur. of Prisons, COVID-19 Tested Positive Cases, available at https://www.bop.gov/coronavirus/(includes recovered cases). These figures under-estimate COVID-19's real toll "given the paltry number of tests the federal givenment has made available" at some BOP facilities, Wilson v Williams No. 4:20-CV-00794 (N.D.-Ohio Apr. 22, 2020), and because BOP only announced on April 23 that it would begin to test asymptomatic inmates, and has only done so at select facilities. Available at https://www.usatoday.com/story/news/-politics/2020/04/23/coronavirus-federal-prisons-expand-testing-asymptomatic-inmates/3015287001/. According to BOP Director Michael Carvajal, "more than 30% of our federal prisons are currently affected," including 53 BOP facilities and 31 Residential Re-Entry Centers, and "institutions such as Oakdale, Elkton, Danbury, Lompoc, Butner, Yazoo City, Forrest City, and Milan are 'hotspots' for COVID-19."

The alarming spread of COVID-19 in BOP facilities confirms that, despite its efforts, BOP cannot safeguard prisoners. For example, from April 21-April 29-more than three weeks after BOP implemented Phase 5 of its COVID-19 Action Plan and inmate quarantine-Terminal Island FCI reported a 1,000% increase of new positive cases (from 57 inmates to 570 inmates). https://www.bop.gov/coronavirus/. This is not an outlier: during the same period, Fort Worth FMC positive inmate cases increased from 35 to 298, and at Butner Medium I cases increased from 27 to 212. https://www.themarshallproject.org/2020/04/24/tracking-the-spread-of-coronavirus-in-prisons. Courts have criticized BOP's overall response as "insufficient" given "the number of infections and deaths which have already occurred in federal custodial institutions," United States v Joling No. 6:11-CR-60131-AA (D.Or. Apr. 17, 2020), and one court described BOP efforts at FCI Elkton as fighting "a losing battle. A losing battle for staff. A losing battle for inmates." Wilson v Williams.

Even in the best circumstances, inmates cannot provide self-care because their incarceration prevents them from following CDC guidance: "People in jails and prisons cannot practice social distancing, control their exposure to large groups, parctice increased hygiene, wear protective clothing, obtain specific pro-

2

ducts for cleaning and laundry, frequently touched surfaces, to sanitize their own environment." United States-Skelos No. 15-CR-317 KMW (S.D.N.Y. Apr. 12, 2020). There are serious doubts that BOP will be able to adequately care for prisoners as the COVID-19 pandemic continues to unfold. https://oif.justice.gov/reports/2016/e1602.pdf. For these reasons, federal courts nationwide have held that COVID-19 constitutes an extraordinary and compelling basis for ordering compassionate release for defendants facing a rapidly growing mortal threat from exposure to the coronavirus in federal prisons. See attachment: Courts granting Compassionate Release in Light of COVID-19. In light of the specific threat Defendant faces, this Court should do the same.

Risk of COVID-19 to people in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected. Basank v Decker S.D.N.Y. Mar. 26,-2020: United States v Campagna S.D.N.Y. Mar. 27, 2020 LEXIS 54401. Defendant resides in a high-risk situation where at least 160 inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers. United States v Zukerman LEXIS 59588 (S.D.N.Y. Apr. 3, 2020). Defendant's underlying health issues and the spread of COVID-19 demonstrate that further delay in removing him from this harm has a high probability of causing him to suffer catastrophic health consequences, including death and enormous bills associated with the care of him as he is likely to need ICU (intensive care unit) intervention.

## ARGUMENT

I. The Court Has Jurisdiction To Grant Defendant Compassionate Release Without Delay.

By enacting the landmark First Step Act of 2018, Congress amended 18 U.S.C. §3582(c)(1)(A)(i) to allow, for the first time, defendants to move on their own behalf for a reduction of sentence. A defendant may file such a motion when he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018, §603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018)(emphasis added). Congress selected this exceptionally short 30-day waiting period in order to expedite defendants' access to the courts and the courts' consideration of compassionate release motions. See United States v Haney No. 19-CR-541 JSR S.D.N.Y. Apr. 13, 2020).

Here, the 30-day waiting period has passed, so this Court has jurisdiction to hear this case.

II. The COVID-19 Pandemic Presents an Extraordinary and Compelling Reason for Defendant's Compassionate Release Due to Defendant's Particular Vulnerability.

A. This Court can determine that COVID-19 presents an extraordinary and compelling reason for compassionate release.

Under Section 3582(c)(1)(A)(i), this Court "may reduce the term of imprisonment" if it finds that "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" The Sentencing Commission has issued a policy statement that provides factual considerations for determining whether compassionate release is appropriate. Those considerations include three enumerated categories of "reasons"-relating to defendant's medi-

3

cal condition, age, or family circumstances, as well as an "all" provision: any "other reason" as determined by the BOP U.S.S.G. §1B1.13, Application Note 1(A). Additionally, the commentary makes clear that the extraordinary and compelling reasons: need not have been unforseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. §1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." However, this policy statement is outdated and inconsistent with the First Step Act to the extent it provides that only the BOP may determine what "other reasons" qualify as "extraordinary and compelling." Since the passage of the First Step Act, there have not been enough commissioners to update the Commission's policies or amend the Sentencing Guidelines. See United States v Brown No. 4:05-CR-00227-1 (S.D. Iowa Oct. 8, 2019) ("As district courts have noted often this year, the Sentencing Commission has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting commissioners."); United States v Perdigao No. 07-103 (E.D. La. Apr. 2, 2020)("Many courts have concluded that ... the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act,"; United States v Rodriguez No. 2:03-CR-00271-AB-1 (E.D. Pa. Apr 1, 2020)("'the scope scope of the old policy statement is clearly outdated and, at the very least, does not apply to the entire field of post-First Step Act motions .... Therefore, the policy statement may provide 'helpful guidance' but does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under §3582(c)(1)(A)(i).'"); United States v Cantu-Rivera No. H-89-204 (S.D. Tex. June 24, 2019)("Because the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must give effect."

It is the Courts' role to determine what "other reasons" warrant compassionate release, not withstanding the Commission's outdated policy statement that provided for BOP to make that determination. See United States v Maumau No. 2:08-CR-758 TC (D. Utah Feb. 18, 2020). Numerous courts have recognized the judicial authority to find that compassionate release is warranted for "other reasons" than those set forth in U.S.S.G. §1B1.13. See, e.g. United States v Poulios No. 2:09-CR-00109 RAJ-TEM (E.D. Va. Apr. 21, 2020)("[T]he court may consider a combination of factors including but not limited to those listed in Application Note 1 in evaluating a petitioner's request for a sentence modification under the 'catch-all provision.'"); United States v Redd No. 1:97-CR-00006 AJT (E.D. Va. Mar. 16, 2020)("[T]he Court joins other courts in concluding that a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. §1B1.13 cmt.n.1(A)-(C)").

There is ample precedent to support compassionate release in light of prisoners' particular susceptibility and vulnerability to COVID-19. Courts in the Fourth Circuit and across the country have

4

found defendant's weight and particularly morbid obesity constitutes an "extraordinary and compelling reason" in favor of compassionate release. See, e.g. United States v Poulios No. 2:09-CR-00109 RAJ-IEM (E.D. Va. Apr. 21, 2020)(finding "extraordinary and compelling reasons to modify [defendant's] sentence because of the great risk that COVID-19 poses to a person of [defendant's] age with underlying health conditions"); Dining v United States No. 2:12-CR-84 (E.D. Va. Apr. 16, 2020)("[T]he confluence of Petitioner's medical conditions and the COVID-19 pandemic may constitute an extraordinary and compelling reason for sentence modification ...."); United States v Jones No. 3:11-CR-249 (E.D. Va. Apr. 3, 2020)(granting compassionate release and converting remainder of sentence to home confinement in light of "the current public health crisis caused by COVID-19"); United States v Edwards No. 6:17-CR-3 NKM (W.D. Va. Apr. 2, 2020)(granting compassionate release); United States v Collins No. CCB-10-336 (D.MD. Mar.-30, 2020)(granting compassionate release to a "non-violent drug offender who has already served a lengthy sentence" even though "it has not been proffered that [defendant] has an underlying health condition which makes him more susceptible to the effects of the virus, and while the risks posed by a defendant's continued residence in a detention facility do not necessarily mandate release"); United States v Copeland No. 2:05-CR-135 DCN (D.S.C. Mar. 24, 2020)(granting compassionate release in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments defendant has during this current pandemic").

Alternatively, this Court has also recognized that the "gross disparity" between the sentence that the defendant received and the sentence that he would have received after passage of the First Step Act presented an "extraordinary and compelling reason" for compassionate release. United States v Redd 2020 WL 1248493. Although the Court's decision in Redd did not address the coronavirus (it was not at issue), it speaks to the issue presented here: if Defendant is not released, he faces a potential death sentence, which is not what Congress or the Court intended at sentencing. Edwards, ("had the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in federal prison would expose him to a heightened and substantial risk presented by the COVID-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentence him to the latter 18 months."). The Court may grant compassionate release to avoid such a gross disparity.

    B.    Defendant is particularly susceptible to contracting COVID-19 because of his conditions of confinement.

Since January 2020, COVID-19 has spread widely—and rapidly--throughout the United States. Positive cases have been confirmed in all 50 states and the District of Columbia. https://www.cdc.gov/coronavirus/-2019-ncov/cases-updates/cases-in-us.html. Since March 21, 2020, the total number of confirmed cases in the United States has skyrocketed from 15,219 to 1,678,843 as of May 27; the number of deaths has risen from 201 to 99,031 and climbing. As of May 27, 2020, the Bureau of Prisons reported that 5,043 inmates and 600 staff members have tested positive for COVID-19. https://www.bop.gov/coronavirus/ (includes recovered cases).

5

Defendant is 41 today. On the date of this report ed in the country 441 positive inmates and 47 recovering inmates. Defendant is currently negative, so he needs to be released before he succumbs to the virus. Judges have recognized the widespread infection at FCI Forrest City Low demonstrates that the BOP has not contained the virus and granted motions for compassionate release. United States v Chatelian, Jr. No. 1:19CR133 LMB (E.D. Va. May 1, 2020); United States v Brown No. 2:18CR-360 KOB-JEO (N.D. Ala May 22, 2020)(waiving procedural requirements finding FCI Forrest City is a "hotspot," and that the surrounding counties cannot care for the inmates at the facility).

These numbers are growing everyday, and almost certainly understate the problem, as the United States in general, and prisons in particular, are vastly behind where they need to be in testing for this virus. Given the rapid onset of symptoms and the fact that many carriers are asymptomatic, the unfortunate reality is that once there is a positive case, it may be too late to prevent further spread in a prison.

The nation's prison system is particularly ill-equipped to handle the spread of a disease as contagious and deadly as COVID-19. COVID-19 can enter a facility and spread rapidly, entirely undetected. Indeed, the Director of the CDC recently warned that up to 25% of people infected with COVID-19 "may not show symptoms." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. The virus has already spread rapidly in BOP and state facilities. https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html. Due to the crowded and confined nature of a detention facility, the spread of the virus in the prisons and jails is far outpacing its spread in the community. Conditions of confinement create the ideal environment for the transmission of contagious disease. Infection Control in Jails and Prisons, https://doi.org/10.1086/521910. In fact, the top two hotspots of COVID-19 in the United States are both prisons: Marion Correctional Institution reported that 81% of its population (2,011 inmates) have tested positive. https://www.dispatch.com/news/20200422/coronavirus-surges-at-pickaway-prison-now-no-2-hot-spot-in-nation---behind-marion-prison. "Prisons are petri dishes for contagious respiratory illnesses." https://www.latimes.com/california/story/2020-03-20/prison-doctors-stark-warning-on-coronavirus-and-incarceration. Inmates cycle in and out of jails and prisons, and people who work in the facilities leave and return daily. According to public health experts, incarcerated individuals "are at special risk if infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings." https://bit.ly/2w9V6oS. Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases. https://bit.ly/2INcNZY. The conditions of confinement not only affect incarcerated individuals, but also the community at large. "With 2.3 million people in the United States in prison or jail on any given day, an outbreak in these facilities poses a threat to the entire country. https://thejusticecollaborative.com/wp-content/uploads/2020/03/TJCVulnerabilityofPrisonsandJailstoCOVID19Explainer.pdf. One COVID-19 model estimates that jails, as currently managed, could account for 99,000 deaths that have not been recognized by other

6

models. https://www.bop.gov/resources/pdfs/2020/bop_covid19_jail_report_2020-04.pdf.

Courts across the country have found that prisoners are at grave risk. "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." United States v Esparza No. 1:07-CR-00294 BLW (D. Idaho. Apr. 7, 2020). Unfortunately, BOP's efforts have not protected inmates. See, e.g. United States v Atwi No. 18-20607 (E.D. Mich. Apr.-20, 2020)("Positive cases among federal prisoners continue to rise, and it does not appear that preventative measures are sufficiently working yet to flatten the curve in BOP facilities."); United States v Razzouk No. 11-CR-430 ARR (E.D.N.Y. Apr. 19, 2020)(BOP's efforts at FCI Otisville "did not protect [defendant] from exposure to the disease in the first instance, despite his vulnerable status"). United States v Muniz No. 4:09-CR-199 (S.D. Tex. Mar. 30, 2020)("[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers ... demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection.").

      C. Defendant is more likely to suffer severe or fatal effects of COVID-19 because of his age and/or health conditions.

Older individuals and people with preexisting health issues are particularly at risk of experiencing severe side effects or death as a result of this virus. According to the CDC, the following groups are at high risk for severe illness from COVID-19: (1) people aged 65 and older, (2) people who live in a nursing home or long-term care facility; (3) people with high-risk conditions, such as chronic lung disease or moderate to severe asthma, serious heart conditions, people who are immunocompromised, obese, or have diabetes, renal failure, or liver disease. https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html.

### RELEASING DEFENDANT IS APPROPRIATE

Indeed, by reducing the potential spread of COVID-19 within the prison system by releasing Defendant would benefit public safety. See, e.g. United States v Harris No. 19-CR-356 (D.D.C. Mar. 26, 2020)("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on ... strict conditions."). Defendant has strong support in the community. If released, Defendant will be removed from a custodial setting where the risk of infection is higher for everyone, including the healthy, and he will live in the community where he is able to practice social distancing, self-quarantine, self-isolate if infected, and seek medical treatment if necessary. COVID-19 rebuts the statutory presumption of dangerousness, see 18 U.S.C. §3142(e) and tilts the balance in favor of release.

In sum, Defendant is a strong candidate for release. His particular susceptibility to COVID-19 while incarcerated, in combination with the mortal risk to Defendant given his age and medical conditions, constitutes an extraordinary and compelling reason warranting compassionate release. Studies have found that for individuals with COVID-19, patients with any comorbidity yielded poorer clinical outcomes than those without. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7098485/. Here the multitude of Defendant's medical

7

conditions puts him at a high risk category for severe illness or death if he contracts the COVID-19 virus. He is currently negative for the virus despite the high rate of positives at his facility, this Court needs to release him while Defendant is still negative so that he can serve out the balance of his sentence without the threat of death. Each day in custody is increasingly risky for Defendant who has no way to practice "social distancing" or other protective measures that are mandated by health officials throughout the nation and which promise some hope of surviving the consequences of infection. In fact a recent obtained video from inside FCI Forrest City Low "shows inmates sleeping closely together, empty soap dispensers, broken toilets and faulty sinks." Defendant has formulated a release plan that will adequately address the concerns presented by COVID-19, protect the public, and ensure his successful transition into the community.

Based on the foregoing Defendant respectfully moves this Court to reduce his sentence to time served or alternatively allow him to serve the remainder of his sentence on home confinement.

Dated: July 30, 2020

Respectfully submitted,

Paul E. Creager
FCC-Forrest City Low
P.O. Box 9000
Forrest City, AR 72336

## DECLARATION OF PAUL E. CREAGER

I hereby certify under the penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and accurate. That I placed a request to the Warden requesting a motion for compassionate release in the prison mailing system on June 29, 2020. I have numerous medical issues that include but not limited to a possible stomach tear, hip replacement, gall bladder removal, obesity, eye lens placement, PCL Tear, bruised heart, difficulty breathing, and cigar smoker entire life.
I have completed GED, Drug Program (12 hr.), Financial classes. I have been employed 20+years and will have no problem obtaining gainful employment.
I will live with my wife, Janet and son Brendan at 4057 Osage RDG in House Springs, MO 63051 (314)-805-9701.

Executed on July 30, 2020 at Forrest City, AR.

Paul E. Creager

8

June 28, 2020

Paul E. Creager #46936-044
FCC-Forrest City Low
P.O. Box 9000
Forrest City, AR 72336

DeWayne Hendrix-Warden
FCC-FORREST CITY LOW
1400 DALE BUMPERS ROAD
FORREST CITY, AR 72335

Re: Motion for Compassionate Release

Warden Hendrix:

I respectfully request BOP officials to file a motion on my behalf in case nos. 4:17CR356 RWS, 4:18CR00197-1 RLW in the U.S. District Court for the Eastern District of Missouri seeking a sentence reduction of sentence based on my medical conditions.

Thank you for your time and any assistance in this matter.

Sincerely,

Paul E. Creager